Good morning, everyone, and welcome to the Ninth Circuit. Judge Miller and I are happy to welcome Judge Gilman from the Sixth Circuit, who's come out to Seattle to help us out. Welcome. Glad to be here. We'll take the cases in the order on the day sheet. The first case, Tiarina v. Kiyokazi, is submitted on the briefs. The next case, Figueroa-Berrera and Nieto-Figueroa v. Garland, is submitted on the briefs. The first case for argument is United Automobile Insurance Company v. Thomas Christensen. Counsel? Is that what I do? Please identify yourself. I'm Christensen. Oh, was I just supposed to identify ourselves, all of us? No, just you. Okay. It's time for me to start? Yes, it is. Okay. Well, I would like to address any concerns that the Court has, if there are specific things that you would like me to address, rather than just launch into something. I guess the big issue is jurisdiction, isn't it, right now? You're challenging jurisdiction, diversity jurisdiction, right? Correct. But that is related to the, and in fact, the lower court determined that there is no jurisdiction and she would dismiss it if it was remanded. And that's what we put in our notice of that indicative ruling, is that that does not change the strategic litigation against public petitioning that this Court is deciding. Well, I mean, if we determined we had no jurisdiction, we couldn't get to the merits, could we? Well, you couldn't get to the merits of the action that was filed, but the inappropriateness of the action still remains. The strategic litigation against public participation still remains and it's still, it's even more of an egregious violation of that. But how can we even reach that at all if we have no jurisdiction? We have no jurisdiction. Because you always have jurisdiction over the litigants' activities before the court. And the very filing of a non-valid cause of action is a strategic litigation against public participation. This should have been dismissed at the very beginning when we filed our anti-SLAPP motion. And it was not. And that was error. So let's assume that if we have no jurisdiction over the complaint because there was a diversity jurisdiction as of the date the deck relief claim was filed, then we don't have any jurisdiction over the SLAPP appeal, the denial of the SLAPP motion. Let's just assume that. The district court says there was no jurisdiction because of the amount in controversy not being met and suggests to us that we remand for her issuing that order under FRAP 12.1. Why shouldn't we just do that? Because that's what we're talking about, is that the basis for finding no, one of the jurisdiction, no amount in controversy sufficient above the 75,000, is that the Beretree claim does not exist in Nevada. And that destroys the, that fact destroys the jurisdiction. Right. And so that wasn't an issue. The existence or nonexistence of the Beretree claim wasn't something that was briefed in any detail to us. So why wouldn't we just send it back to the district court subject, of course, to a further appeal after the district court has made its ruling? Well, the existence or nonexistence of the Beretree claim was briefed to the court. And it's also, let me get, let's look it up here. There was an argument that the Beretree claim was not meritorious, but not that it didn't exist in Nevada. Well, no, it was, it was stated that it doesn't exist in Nevada. That was argued below and was briefed here. But then the item that composed the Beretree claim was three groundless lawsuits. If a Beretree claim existed, their allegations were that it required three groundless lawsuits. And there's no standing for that either. But that doesn't change the nature of the impropriety of filing this lawsuit against and causing the insured and his independent counsel and his counsel representing him against the insurance company additional cost, fees, expenses, and to influence whatever was happening in the other courts below. And so it makes it worse. If the claim was just not a really strong claim, that would be one thing. This is a frivolous claim, an improper claim that was filed below. And to send it back results in the potential problem that we've already experienced in this very case. And that was the original claim against the insurance company for coverage and for unfair claims handling practices was originally the entire case dismissed by the trial judge. It went up on appeal to the Ninth Circuit. That was reversed because the renewal certificate was ambiguous. And ambiguities, it's solid, rock-solid law that ambiguities are to be construed against the insurance company and in favor of coverage and the insured. And so that was remanded. And the trial court then had to find in favor of the insured and find coverage and found a breach of the duty to defend. But then said, well, since I granted summary judgment improperly as a matter of law, this was a reasonable position for the insurance company to take. All right. Well, tell me, what do you want us to do here on appeal? That what should be done is that the court should rule that the judge originally, the trial judge on this case, in evaluating the anti-SLAPP motion, did not consider the evidence presented and determined that the action for barratry was demonstrated to be not appropriate. All right. But that's the merits. How can we get, because simultaneously you're telling us we don't have jurisdiction. Because the barratry claim was not appropriate. And that's the same thing that the judge Can you cite me a case that supports your position that we can rule on the merits of whether the anti-SLAPP, you know, thing was proper or not, if we don't have jurisdiction? Well, the very, that it's like the chicken and the egg, isn't it? No, I don't think so. The district judge denied the special motion to dismiss. The special motion to dismiss was to dismiss a complaint that we don't know whether the district court had jurisdiction over. So I don't know how we can rule on a motion to dismiss a complaint that there may be no jurisdiction over it. So maybe you could see if there is a case on that point. Let me let me read this. Perhaps it'll be clearer. All right. The ambiguously pled non-existent barratry claim admitted by UAIC in their briefs, in this case, to require three groundless lawsuits. That's what they say their barratry claim required, which is page 27 of UIC's brief. In this case, UIC barratry claim requires that Christensen excited at least three groundless lawsuits. Obviously, UAIC only has standing regarding lawsuits against UAIC. And this was argued in the court below, and it's argued here. There were not even three lawsuits against UAIC. So the fact that they don't have standing is one of the legs that the trial court should have considered in granting our anti-SLAPP motion. This fact was demonstrated by the docket sheets. All the docket sheets demonstrated that. What are you quoting from, your own brief? No, I'm quoting, I'm just reading my argument. Because I'm old and I struggle with, you know, keeping things complete. But even if the court believed UAIC had standing down there, so that was one of the main reasons. And it has to be a reason for an anti-SLAPP to be successful on an anti-SLAPP motion. Otherwise, the court is saying they can file, as long as their lawsuit is totally groundless, and they don't even have jurisdiction to bring it, they can bring it at will and inflict pain and attorney's fees on other litigants. There's been pain in this case for a decade and a half, hasn't there? Yes, that's right. Along those lines, can I ask, we have all this litigation growing out of a policy with a $15,000 coverage limit. Have you considered or would you consider working with the circuit mediation program in an effort to settle this? Is that something that might be productive? Yes, and we already have. And we've actually discussed more recently. But yes, obviously, always, we are willing to. Most times, which is common with insurance companies, they are not really interested in discussing settlement until they finally have exhausted every single frivolous argument. I would like to reserve the rest of my time if I may. I was just going to ask you, yes, you may. Okay, thank you. We'll hear from the other side. Good morning, your honors. May it please the court. Abraham Smith and Dan Poulsenberg for UAIC. Let me address the jurisdictional issue first. There's a couple of issues. One, appellate jurisdiction and then obviously subject matter jurisdiction. I think on the issue of subject matter jurisdiction, we have the indicative ruling from Judge Dorsey. However, the respondent is requesting affirmative relief from this court. I don't think you can give him that. I do think that you can affirm the denial of anti-SLAPP relief. It's an interlocutory appeal. You can affirm that. And when it goes back down to Judge Dorsey, then it would be- And do you have a case on that? Because if we have no jurisdiction, if there was no diversity of jurisdiction over the complaint, it's puzzling to me how we could affirm the denial of a special motion to dismiss a complaint that there was no jurisdiction over it. I understand, and quite frankly, if you want to simply direct that the complaint be dismissed for lack of subject matter jurisdiction or remand for the district court to do that, if the result is simply that there's no sanction under the Nevada anti-SLAPP statute, that's probably a result we could live with. However, in the Bronson versus not, K-B-R-O-N-S-O-N versus N-O-T-T, and I just closed my computer so I don't have a federal reporter citation, but I can pull that up if you need me to, the court said that you can entertain- Obviously, the court retains its inherent powers, its sanction powers under Rule 11. So there could be a case, for instance, where despite the absence of subject matter jurisdiction, the court could retain jurisdiction in order to award Rule 11 sanctions. I don't think that would extend to affirmative anti-SLAPP relief under Nevada substantive law, but I think that- Okay, so the answer is no because this is a question of state law. Why shouldn't we just remand to the district court pursuant to 12.1 as the district court strongly suggests we do? So like I said, I think that may be a result we could live with. Obviously, the district court denied anti-SLAPP relief, and if the result of that would be our complaint is dismissed but there's no anti-SLAPP, then obviously that would be an appealable order we could elect at that point. Probably, though, it sounds like it'd get dismissed simply because there's no diversity jurisdiction because it doesn't meet the $75,000 threshold. Well, so Judge Gilman, that is a good point. However, that was not briefed in this appeal, the issue of the Mountain Controversy. So I don't know that this court could simply say itself, oh, we don't have subject matter jurisdiction because that wasn't briefed. The issue of the Mountain Controversy wasn't briefed before this appeal. It came up after. Obviously, our client disagrees that the $75,000 threshold was not met. We do think that the controversy includes the declaratory relief, which affects the ability of the defendants in this case to recover a $3.5 million, maybe $5 million or more judgment. The district court wasn't impressed by that, but it seemed to indicate you would have an opportunity to brief that or bring an amended complaint and brief that issue on remand. Yes, perhaps. So if that's where the court is leaning, I don't want to push you in a direction that you aren't going to go. Sure, that's your job, if you think that's the better result for your client. I understand. I mean, the reason why I'm sort of struggling a little bit with the question is because obviously the ruling below, whether it's law of the case perhaps, that may be too strong of a term, is that there is no anti-SLAPP remedy for the plaintiffs. So if the district court were simply to dismiss on lack of subject matter jurisdiction, then again, we would have our appellate rights from that, but we're still not subject to the anti-SLAPP sanction. The result that I would be worried about, of course, is if there were an opportunity somehow on remand to again exercise a right to anti-SLAPP relief. I'd hope that this court's order, if it were going to remand, would make clear that it's not remanding for the district court to once again take jurisdiction over the anti-SLAPP question, but just to address the subject matter jurisdiction question. Let's get to the indicative ruling of the district court clearly says, hey, there's no common law cause of action for barritory under Nevada law, right? Do you have any authority that would question that result? I mean, is there any reason, for example, if we remand for the injunctive relief issues as to whether that meets the minimum, what about, could we go ahead and rule, agree that barritory is out? No, I don't think that barritory is out. The district court relied primarily on this court's decision in the Del Webb versus Partington case. Obviously, that's a federal court decision anticipating the trajectory of state law. Frankly, I don't know that it was correct on that issue, which was a champerty claim. The Ninth Circuit did not address the specific barritory cause of action. I don't think it's an especially exotic cause of action. Do you have any authority, you can cite us from Nevada, that says barritory might be still a valid, or has it ever been a valid cause of action? So, I think the parties agree there's not a Nevada case specifically addressing barritory. What there are are cases addressing issues of champerty and maintenance, including the Lum versus Stinnett case, which was cited in Del Webb. It tried to distinguish that case on the basis of, oh well, Lum, which involved something like a Mary Carter type agreement. Lum involved an issue of collusion, and so therefore, in those circumstances, the Nevada Supreme Court held that yes, there could be an action for a champerty to dissolve a champerty's contract. Here, I think that is the issue. Although our claim is not for champerty, it's for barritory, which the Nevada Supreme Court has not said is not a viable cause of action, and it did exist at the common law at the time Nevada entered the union. It's adopted through NRS 1.030. And more recently, in 2013, the Nevada Supreme Court, in Trujillo versus State, that's 129 Nevada, 706, and 310 Pacific 3rd, 594. Again, that's from 2013. The Nevada Supreme Court explained that yes, this statute, NRS 1.030, is broad to the extent that even if there's a case bringing up a common law cause of action that hasn't been litigated before, unless it's repugnant to a statute or the Nevada Constitution, it would be adopted as the law of the state. In that case, it was a criminal case. It involved the writ of quorum nobis, which, at least in our state, nobody had heard of for quite some time. And the Nevada Supreme Court said, yes, that writ does exist, although it's not codified. It's one of those ancient writs that exist only for defendants once they're out of custody. The court was willing to entertain that by virtue of the statute, which incorporates the English common law. So I gather if we send the whole thing back, you plan to argue before the district court that there is a baritary cause of action, even though the indication is no, there's not. It certainly is our position that there is a baritary cause of action in Nevada. Yes, it has not been tested before the Nevada Supreme Court, but I think that the statute, which incorporates the English common law, as well as cases throughout the country, I know our friend mentions the California statute, which requires three actions. I think we have at least five actions here. But there are other common law definitions, including Blackstone, that don't expressly reference three actions. It's a practice of fomenting litigation or quarrels between people. And so the question would be, in a case like this, is there any recourse when a person, whether or not they're a lawyer, interferes with the insurer's right to defend their insured after the insured has a right to be freed from a default judgment that has expired. I think that baritary is actually the appropriate cause of action here, perhaps better even than something like abusive process, because we're not specifically talking about, and again, it sounds like we're not eager to delve into the merits of the anti-SLAPP motion today, but this isn't an issue where we are saying that certain statements made in a pleading or in litigation communication are inaccurate or are false, and therefore we have a cause of action. We're saying that the problem here is that there was an attempt, an orchestration to prevent us from being able to exercise our right to defend our insured from a judgment that had already expired. But even, but I mean, just to sort of recapitulate what the district court said, I mean, even though, I mean, that is activity that has happened in the world during the last, you know, century, but the Nevada courts have not yet had occasion to say that the cause of action that you're relying on actually exists for that sort of behavior, right? Correct. The Nevada Supreme Court has not ruled on this particular issue, but I do want to underscore a difference between our case and some of the cases that are cited in support of the notion that, oh, well, you know, we just don't want a cause of action for Champerty. Now, Beartree, I don't know that they've cited any cases that say there's no such thing as a cause of action for Beartree, certainly nothing in Nevada. But how could there be a, I mean, if there's no cause of action for Champerty in maintenance, how could there be one for Beartree? Isn't Beartree just sort of a practice of Champerty or maintenance? I think there are different definitions of Beartree. It very, in some of the statutes, it's defined that way to be, to require, you know, some kind of financial interest in a suit and having that repeated over time. But I think something like the Blackstone case or the Betker case from Kansas, I can cite that to you as well, B-O-E-T-T-C-H-E-R versus Criscione, C-R-I-S-C-I-O-N-E, Kansas, 100 Kansas reports, 39. The court said that they're, that the, I apologize, that the primary consideration in Champerty is whether there was stirring up of quarrels. So it's not necessarily tied to the specific requirements that exist in some states for an action for Champerty in maintenance. And I think the reason why that fits this case especially well is the unique circumstances we have here. This isn't just, you know, people in the case where they, you know, they don't like that they were sued. This is much more than simply we don't like that we were sued. This is the direct interference with our, the insurer-insured relationship. I don't know that that's been tested in these cases, all of the cases that talk about, you know, we want to retreat from the doctrine of Champerty in maintenance because, you know, sometimes actually litigation is a good, is a positive value in our society. Those aren't addressing the situation we have here where we have a right to defend our insured. This court and the Nevada Supreme Court said not only has the judgment expired but the appeal from Judge Jones' ruling that we aren't liable for more than our policy limits that that appeal had to be dismissed for lack of standing because there was no damage to Mr. Lewis. Of course, you realize you've got almost an impossible hill to climb if when we remand, presumably the district court's going to enter it's what's now an indicative ruling against you, right, on jurisdiction. I understand that, which is why if that were to happen, then of course we could, you know, if it makes sense to appeal that ruling, that would be an appeal from the merits as opposed to the issue we're talking about today. So we may end up inheriting this case again? Well, perhaps. I wonder if your insurance company wishes they had just paid the $15,000 15 years ago and moved on. I won't speculate as to what they wished at one point. In regard to your comments about the mediation, I think we are eager to see this case resolved with the ruling from this court and more recently the Nevada district court state district court holding that there is no claim against UAIC. We would like to see this litigation put to bed. So obviously we did not get very far into the merits of the anti-slap motion, but is there anything you'd like me to address on that point? Apparently not. Thank you. We appreciate your argument. You have a few minutes left for a rebuttal. I'm going to try and read it so I get through it all, but I apologize. The court must always consider jurisdiction, as the court knows, and the court below has issued an indicative ruling, but as stated in our notice of indicative ruling, a simple dismissal without the full effect of the anti-slap statute would be to reward and encourage further strategic litigation against public participation. You just heard him say that if you remand it and for her to put in the indicative ruling dismissing this case, they're going to appeal it. And we'll be right back up here and further strategic litigation against public purpose. Standing and jurisdiction, as this sophisticated litigant is certainly aware, jurisdiction and standing are issues that are never waived and must be present at all stages of the litigation. So to say that, well, it wasn't pled here or it's not before you, you have that responsibility. There are three cases that require reversal of the anti-slap and that would be the appropriate decision if you were going to send it back down, would be to reverse the anti-slap decision and allow the court to do whatever with regard to that so that there wouldn't be any constraints on her activities perceived or otherwise now that she realizes there is no baritary claim in Nevada. And then this is to go to what Judge Miller talked about. With only one exception of what occurred from the injured party's point of view or the insured's viewpoint was out of the ordinary with this type of litigation. All this ongoing litigation since 2007 of the breach of the covenant of good faith and fair dealing, there's only one exception to that being just an ordinary case. Every single case, there's a liability claim made against an insured, there's a judgment or an excess judgment or whatever, there's improper defense or those types of things and so then either the insured or the liable party, I mean the tort claimant gets an assignment from the insured or the insured and the tort claimant sue the insurance company for coverage and for breach of the covenant of good faith and fair dealing. Also, unfortunately, none of what followed is unusual from the viewpoint of the insurance company either. And that is they take all steps, it's scorched earth policy on their part, it's bring every single claim up. The only unusual thing, I would submit in this case, is the resolve of both the insured and the injured party to obtain justice in this situation and to not clearly remand with the opportunity for the judge to take a second look at what the effect of the anti-slap statute in Nevada is of an insurance company bringing a totally groundless claim against the attorneys representing the insured against the insurance company would be not just. Thank you. Thank both sides for their argument. The case of United Automobile Insurance Company versus Christensen is submitted. The next case...
judges: Gilman, IKUTA, MILLER